IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BAPTIST HEALTH                                                PLAINTIFF

V.                                                            CIVIL ACTION NO.
                                                              3:09-CV-060-MPM-SAA
BANCORPSOUTH INSURANCE
SERVICES, INC., d/b/a RAMSEY,
KRUG, FARRELL & LENSING                                       DEFENDANTS

**ORDER**

Plaintiff Baptist Health seeks and order compelling production of documents sought in its Second Requests for Production of Documents, propounded to defendant, Bancorpsouth Insurance Services Inc., d/b/a Ramsey, Krug, Farrell & Lensing ("Ramsey Krug"). Ramsey Krug has responded to the motion, and it is ripe for decision.

The Fifth Circuit recognizes broad and liberal treatment of the federal discovery rules. *U.S. v. Holley,* 942 F.2d 916, 924 (5th Cir. 1991), citing *Hickman v. Taylor*, 329 U.S. 429, 501 (1947). In civil cases, parties may discover any non-privileged matter that is relevant to any party's claim or defense. Fed.R.Civ.P. 26(b)(1). Discovery requests are relevant when they seek evidence that is admissible or "reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1484 (5th Cir.1990) (quoting Fed.R.Civ.P. 26(b)). The Fifth Circuit has also recognized, that while "[f]ull and complete discovery should be practiced and allowed . . . its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919 (5th Cir. 1964). Where relevance is at issue, the burden is on the moving party to demonstrate the materials and information sought are relevant to the requesting party's claim or defense or will lead to the

discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D.Tex. 2006). The requirement of relevancy is to be construed liberally and practically, rather than narrowly. 8 Charles Alan Wright & Arthur Miller, Federal Practice& Procedure Civ. § 2008 (3d ed).

At issue here is whether Ramsey Krug, acting as Baptist Health's insurance broker, was negligent and breached its fiduciary duty in placing claims-made directors and officers ("D&O") insurance coverage on Baptist Health's behalf. Doc. # 76. More specifically, Baptist Health alleges that (1) Ramsey Krug failed to remove warranty questions from an application for renewal coverage with one carrier and then used the same application, including its responses to the warranty question, to apply for new coverage with another carrier on Baptist Health's behalf, and (2) failed to provide Baptist Health proper advice regarding the implications of answering these questions, which resulted in a gap in coverage and ultimately substantial financial losses. Doc. #1.

The disputed requests for production seek documents that Baptist Health asserts may reveal Ramsey Krug's practice with regard to D&O insurance applications made on its own behalf during the period immediately preceding and following the relevant dates in this action. The deposition testimony reveals that there is some dispute whether it is Ramsey Krug's standard practice to remove warranty clauses from renewal contracts, such as the one that forms the basis of Baptist Health's claim. Doc.# 75-8, 75-9, pp.5-6.

Baptist Health argues that because Ramsey Krug had a professional and fiduciary duty to omit the warranty questions from the two applications completed by Baptist Health in 2003, the manner in which Ramsey Krug completed applications on its own behalf is relevant and

2

discoverable. Doc. # 76.  In support of this position, Baptist Health offers evidence from the deposition testimony of Ramsey Krug officials and experts that demonstrates conflict among Ramsey Krug's own witnesses as to what the standard practice with regard to warranty questions was during the relevant time period.  Specifically, Floyd McCann, Ramsey Krug's Senior Vice President, testified that to his knowledge no one at the company ever left a warranty question unanswered, no one asked that one be omitted from any application for insurance and when asked whether it was possible to have a warrant question removed from an application, stated that he had "never seen it done." Doc. #75-8, pp. 4-6.  In contrast, Thomas Hesselbein, Ramsey Krug's Executive Vice President of the Health Care Division, testified that it was his personal practice to "make sure that there were no warranty questions answered in renewal applications unless the insurance company was specifically requiring for some reason . . ." and that typically warranty questions are not required for renewal applications. Doc. #75-9, p9.3, 6.[1]

Ramsey Krug responds that the requested insurance applications are in no way comparable to the insurance application at issue in this litigation and are therefore irrelevant, pointing out excerpts from Baptist Health's own expert William Edwards to support this argument.  Doc. #97-3.[2]  Edwards testified that whether an industry was experiencing a "soft" or "hard" market on insurance availability could affect the practices of carriers on what questions

---

[1] Baptist Health further notes that Ramsey Krug's experts also have provided conflicting opinions about industry practice and whether warranty clauses were customarily included or excluded during the relevant period. Doc. #76. Because Baptist has offered no evidentiary support in the record for this assertion, these statements are not properly before the court for consideration.

[2] Other statements not discussed by the court are provided in Ramsey Krug's Response, but because the exhibit offered as evidentiary support does not correspond to these assertions, they are not properly before the court for consideration.

would be required for underwriting [Doc. #97-3, p.6], and that the willingness of the underwriter for the a company to extend coverage to Baptist Health at a reduced premium during the relevant time period indicates that the non-profit healthcare industry was experiencing a "soft" market. Doc. #97-3, p.7. Baptist Health has offered no evidence to show that the sector covering financial institutions and insurance agencies/brokers, in which Ramsey Krug operated, was experiencing similar market conditions during the same period.

The Advisory Committee Note to the 2000 amendment to Fed.R.Civ.P. 26(b)(1) is instructive:

> The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action, cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

After careful review of the arguments on both sides, the court concludes that the requested documents are discoverable. This case stems from an alleged breach of fiduciary duty by Ramsey Krug to act in the best interests of Baptist Health in completing two D&O insurance applications, one for renewal and one for new coverage. Therefore, the care Ramsey Krug applied to its own business in this area is relevant to the issue of whether it protected itself in a way that it did not do so for its customer, Baptist Health. While there are obvious differences in the business sectors in which the parties operate, the rationale for having claims made D&O

4

insurance is consistent across industries. Similarly, the effect of responding to warranty questions in applications for new or renewal coverage in this area would also appear to be consistent.

Furthermore, the conflict between McCann's statements that no one at Ramsey Krug ever asked for a warranty question to be omitted or stricken from any application for insurance, and that he was not even aware whether it possible to have such a question omitted or stricken and Hesselbein's statements to the contrary raise important questions of fact in this case. The requested documents are relevant for both clarification and potential impeachment on this issue. Finally, even if standard practice regarding inclusion of warranty questions in D&O policies varies among industries and is dependent upon market condition, the issue in this case is Ramsey Krug's practice with respect to both its own business and client preservation. The requested documents address that issue. It is possible that the trial judge may ultimately conclude that they are not admissible at trial, but their relevance may also be an area addressed by expert testimony in light of the facts of the case. The court simply cannot know how the chips will fall on that issue, but in the meantime, Ramsey Krug must produce the documents.

For these reasons, the court finds that the requested information is reasonably calculated to lead to admissible evidence and is therefore discoverable. The ultimate admissibility of the evidence is, of course, within the purview of the presiding trial judge in this matter, Chief Judge Mills, and will be ruled upon by him at the appropriate time.

Ramsey Krug has also objected on the basis that Baptist Health's requests are overbroad in seeking documents which are not focused on the relevant time period or the relevant market conditions in the non-profit health care industry during the relevant period. Doc. #76. The court

5

finds this argument persuasive.  The expert testimony alluded to by Baptist Health in support of its motion t compel looks to a much narrower range of dates, and the applications that are the core of this litigation fall entirely within that range.  Accordingly, the court finds that documentation for the full range of dates requested by Baptist Health --some ten years – exceeds the logical bounds of necessity, and Ramsey Krug need produce only documents from the relevant time period, 2001 through 2005.

Accordingly, it is **ORDERED**

That Baptist Health's motion to compel is **GRANTED IN PART** and **DENIED IN PART** as discussed above; no later than May 10, 2010, Ramsey Krug must provide copies of the requested applications for the period from 2001 through 2005.  Counsel for Baptist Health may not disclose the documents or their contents except as necessary to prosecute this litigation.

This the 29th day of April, 2010.

/s/   S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE