IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

BAPTIST HEALTH                                          PLAINTIFF

V.                                                      CIVIL ACTION NO.
                                                        3:09-CV-060-MPM-SAA

BANCORPSOUTH INSURANCE
SERVICES, INC., d/b/a RAMSEY,
KRUG, FARRELL & LENSING                                 DEFENDANTS

## ORDER

Before the court is a motion by defendant Bancorpsouth Insurance Services Inc., d/b/a Ramsey, Krug, Farrell & Lensing to compel production of documents under Fed.R.Civ.P. 34. The issues have been fully briefed, the motion was accompanied by the requisite good faith certificate in accordance with L. U. Civ. R.37(a) and this matter is now ready for review.

## BRIEF FACTUAL SUMMARY

BancorpSouth Insurance Services, Inc. is an insurance broker with several divisions in different states, but it is incorporated under the laws of the State of Mississippi, and its principal place of business is Tupelo, Mississippi. Defendant's Ramsey, Krug, Farrell & Lensing division is headquartered in Little Rock, Arkansas. Plaintiff Baptist Health, an Arkansas corporation with its principal place of business in Little Rock, Arkansas, claims that the defendant holds itself out as an expert with specialized skills in "identifying risk," "evaluat[ing] and solv[ing] enterprise risk issues" and pledges "long-term partnerships" with its clients. Docket 10, p.2. Defendant held a close business relationship with Baptist; among other things, its role included putting insurance carriers on notice if Baptist suffered a loss and helping Baptist file insurance claims. *Id.* Plaintiff contends that this close relationship ultimately resulted in Baptist obtaining a "position of influence and superiority in the Baptist health organization on insurance matters." *Id.* at 3.

At issue in this case is the 2003 renewal of directors and officers insurance coverage for Baptist from Executive Risk Indemnity Inc. (ERII). The renewal application included "Question 22":

> 22. No Entity nor any individual proposed for coverage is aware of any fact, circumstance, situation, transaction, event, act, error, or omission which they knew or should reasonably have known may result in a claim that may fall within the scope of the proposed insurance except as follows. If the answer is "None," so state:

Docket 10, pp. 3-4. In response to question 22, Baptist answered "None." *Id., at 4.* Baptist contends that it is "standard practice in the insurance industry for brokers, under certain circumstances, for brokers to request that insurers delete from their applications warranty questions such as Question 22, particularly in a situation such as the instant case where it is a renewal application. *Id.* It is undisputed that defendant did not do so.

Ultimately, ERII was not the insurer on the policy in effect from December 16, 2003 to December 16, 2004. Docket 10, pp. 5 & 6. Instead the policy was bound by Platte River Insurance Company ("Platte River"). *Id.* As a requirement of coverage, Baptist had to submit an application on Platte River's application form.[1] *Id.* The application form contained Question 6, which was similar in substance to Question 22 above. *Id* at p. 6.

Also in 2003, Baptist, through its officers and board of directors, adopted an economic credentialing policy ("ECOI"). Docket 10, p. 6. Between February 2004 and November 2006 several lawsuits were filed against Baptist relating to the adoption of the ECOI. *Id.* Platte River denied Baptist's claims for coverage for several of these lawsuits and filed a declaratory judgment action against Baptist in the Eastern District of Arkansas seeking determination of its duties with

---

[1] This application, of course, was now not a "renewal application" but a new application with a different insurer.

regard to coverage under the policy. *See Platte River Ins. Co. v. Baptist Health, et al.,* Case No. 4:07cv36-SWW, Eastern District of Arkansas, Western Division. In April 2009, District Judge Wright in that case issued a memorandum opinion and Order finding in favor of Platte River and stating in part:

> Given these facts and circumstances known to Baptist Health, the conclusion that Baptist Health's answers to Question 22 on the ERII Application and Question 6 on the [Platte River] Application were misrepresentations seems inescapable.

Docket 15, p.8, citing *Platte River Ins. Co. v. Baptist Health, et al.,* Case No. 4:07cv36-SWW, Docket 80, p. 32.

The instant case was filed in June 2009. Docket 1. On December 1, 2009, Defendant propounded its first set of requests for production of documents to Baptist. Docket 49. Baptist responded on December 31, 2009. Docket 56. At issue in the current motion is Request for Production number 17:

> All documents which in any way provide advice, counsel, recommendations, and/or strategy regarding the study, adoption, and implementation of Plaintiff's economic credentialing policy (ECOI), including documents that address the economic credentialing policy's (ECOI) relationship with and effect on the Plaintiff's D&O insurance coverage. This response should include but not be limited to the Plaintiff's executive committee minutes regarding the ECOI.

Docket 90, p.1. Baptist responded to Request for Production No 17 as follows:

> In addition to the general objections stated above and incorporated herein, Baptist Health objects to this Request for Production to the extent it seeks documents subject to the attorney-client privilege or work product doctrine. Without waiving any general or specific objection, Baptist Health will produce responsive, non-privileged/non-work product documents at a mutually convenient time and place.

Docket 90, p. 2. Baptist provided defendant a privilege log which identifies 76 documents that it claims are protected from production by the attorney-client privilege, the work product doctrine or as confidential information. Docket 90-5. Defendant contends that Baptist has waived any

privileges associated with these documents due to Baptist's "voluntary injection into this lawsuit material issues under its claimed theories of liability against [defendant] which require disclosure of the documents" and should be compelled to produce them, as well as any other responsive materials. Docket 90, p. 2. Defendant further contends that one of Baptist's former senior vice presidents, Allen Smith, who was in charge of purchasing D&O insurance, waived the attorney-client privilege as to communications with attorney Harold Simpson, who was hired by Baptist for legal advice regarding adoption of the economic credentialing policy.

LAW AND DISCUSSION

The Fifth Circuit recognizes broad and liberal treatment of the federal discovery rules. *U.S. v. Holley,* 942 F.2d 916, 924 (5th Cir. 1991), citing *Hickman v. Taylor*, 329 U.S. 429, 501 (1947). In civil cases, the parties are entitled to discover all information relevant to any party's claim or defense that is not privileged. Fed.R.Civ.P. 26(b)(1). Discovery requests are relevant when they seek evidence that is admissible or "reasonably calculated to lead to the discovery of admissible evidence." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1484 (5th Cir.1990), quoting Fed.R.Civ.P. 26(b)(1). The Fifth Circuit has also recognized, that while "[f]ull and complete discovery should be practiced and allowed . . . its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919 (5th Cir. 1964).

Where relevance is at issue, the burden is on the moving party to show the materials and information sought are relevant to a claim or defense or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D.Tex.2006); Fed.R.Civ.P. 26(b)(1). Likewise, the party resisting discovery must specifically articulate how each discovery

4

request is not relevant or is overly broad, burdensome, or oppressive. *Id.*

Under Rule 501 of the Federal Rules of Evidence, state law determines the applicability of a privilege in civil diversity actions where state law supplies the rule of the decision. *Dunn v. State Farm,* 927 F.2d 869, 875 (5th Cir. 1991). Mississippi privilege law thus governs this diversity action. Generally, the federal and Mississippi laws of privilege mirror one another, though there are slight but meaningful differences.

Rule 502(b) of the Mississippi Rules of Evidence defines the attorney-client privilege as the client's right to refuse to disclose and prevent others from "disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." The Rule further requires that the confidential communications must have been made:

> (1) between [the client] or his representative and his lawyer or his lawyer's representative, (2) between his lawyer and the lawyer's representative, (3) by [the client] or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of lawyer representing another party in a pending action and concerning a matter of common interest therein, (4) between representatives of a client or between the client and a representative of the client, or (5) among lawyers and their representatives representing the same client.

*Id*. To remain protected, a communication must not have been intentionally disclosed to third persons unless the disclosure was "made in furtherance of the rendition of professional legal service to the client or disclosure was reasonably necessary for the transmission of the communication." Miss. R. Evid. 502(a)(5). Of course, the privilege is a two-way street, providing protection whether the lawyer communicates to the client or vice versa. Miss. R. Evid. 502 cmt.; *Hewes v. Langston*, 853 So.2d 1237, 1244 (Miss. 2003).

Because attorneys often desire to more narrowly construe Rule 502 than is required, it bears

5

repeating that the rule does not demand that the communication solely contain legal analysis or advice; rather, privilege protection attaches to those communications that would *facilitate the rendition of* legal services or advice. *Hewes*, 853 So.2d at 1244, quoting *Dunn*, 927 F.2d at 875 (applying Mississippi law). More importantly, the Mississippi Supreme Court describes its interpretation of the attorney-client privilege as being broad and has held that "the privilege relates to and covers all information regarding the client received by the attorney in his professional capacity and in the course of his representation." *Id.*, quoting *Barnes v. State*, 460 So.2d 126, 131 (Miss. 1984). For instance, research conducted by an attorney in response to his client's request achieves privileged status. *Id.* at 1247 , citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999).

A "client" may be a corporation, and a "client's representative" may be a corporate employee who has "authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or an employee of the client having information needed to enable the lawyer to render legal services to the client." Miss. R. Evid. 502(a)(1)-(2). The corporate client has the right to refuse to disclose "confidential communications between its representative and its attorneys when the communications were made to obtain legal services ." *Nguyen v. Excel Corp.*, 197 F.3d at 206. Because counsel in the context of the corporate setting often play a role in the day-to-day operations of the corporation, the attorney-client privilege is increasingly difficult to define. *Brookshire Bros. Holding, Inc. v. Total Containment*, 2006 WL 845731, *2 (W.D.La., 2006).

Waiver of the attorney-client privilege may occur in a number of ways, the most common waiver occurring when a client reveals otherwise privileged communications with his or her

6

attorney to a third party. *See Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So.2d 767 (Miss. 2003). Another method is relevant here: "By voluntarily injecting into a litigated case, a material issue which requires ultimate disclosure by the attorney of the information, ordinarily protected by the privilege, the client makes the information discoverable." *See id.* at 773, citing *American Standard, Inc. v. Bendix Corp.,* 80 F.R.D. 706, 708 (W.D.Mo.1978). In *Conkling v. Turner,* 883 F.2d 431 (5th Cir.1989), the Fifth Circuit stated,

> The attorney-client privilege "was intended as a shield, not a sword." "[W]hen confidential communications are made a material issue in a judicial proceeding, fairness demands treating the defense as a waiver of the privilege." The great weight of authority holds that the attorney-client privilege is waived when a litigant "place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party."

*Conkling,* 883 F.2d at 434 (citations omitted). *See also Jackson Medical Clinic for Women*, *P.A. v. Henley,* 965 So.2d 643, 648 (Miss. 2007) (fairness requires that use of the attorney-client privilege as a sword prohibits hiding behind it as a shield). Moreover, the general rule, which Mississippi appears to follow, is that a waiver of the privilege is deemed to encompass all information related to that topic. *See Bennett v. State,* 293 So.2d 1, 4 (Miss.1974), *overruled on other grounds by Triplett v. State,* 579 So.2d 555 (Miss.1991) (upon waiver of the privilege, the client "and his attorney may then be fully examined in relation thereto."), quoted in *Jackson Medical Clinic for Women, P.A. v. Moore*, 836 So.2d. at 771. *See also* Hazard & Rice, "Judicial Management of the Pretrial Process in Massive Litigation: Special Masters as Case Managers," 1982 AM. BAR FOUND. RES. J. 375, 399 ("The waiver doctrine entails the result of waiver not only of the claim for the particular document, but for any other document relating to the same subject matter."), quoted in C. Wright, A. Miller &

R. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2016.2 at 238 & n.7 (1994).[2]

In Mississippi, the attorney-client privilege belongs to the client; lawyers must "maintain inviolate the confidence and, at every peril to themselves, . . . preserve the secrets of their clients." Miss.Code Ann. § 73-3-37(4) (2000). Although it is only the client who may claim the privilege, the client may also waive it. "Once the client has effectively waived the privilege, the attorney is competent as a witness regarding matters otherwise within the scope of the privilege." *Barnes v. State,* 460 So.2d 126, 131 (Miss.1984). In *Bennett v. State, supra*, the Mississippi Supreme Court addressed the effect of a client's waiver of the privilege:

> While a client does not lose the benefit of the privilege where he is compelled, against his protest, to disclose confidential statements, if he voluntarily introduces testimony relating to such communications, his privilege may not thereafter be asserted. Thus, where he voluntarily testified, as a witness, to confidential communications made by him to his attorney, he thereby waives the privileged character of such communications, and he and his attorney may then be fully examined in relation thereto.

*Bennett,* 293 So.2d at 5, quoting 58 AM.JUR. *Witnesses* § 526.

The work product doctrine does not fall under the auspices of Federal Rule of Evidence 501; the federal law which controls is codified at Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Dunn*, 927 F.2d at 875. Under the general application of the doctrine, a party may not discover documents or tangible things which are otherwise discoverable but "prepared in anticipation of litigation or for trial by or for another party by or for that other party's representative (including the

---

[2] Footnote 7 of Wright and Miller contains numerous citations from numerous jurisdictions supporting the proposition that waiver extends to all communications between counsel and client related to that subject. Although the Mississippi Supreme Court has recognized the concept of a limited waiver, *see, e.g., Century 21 Deep South Properties, Ltd. v. Corson*, 612 So. 2d 359, 374-75 (Miss 1993), in every case where the concept was recognized, the client specifically reserved its right to claim the privilege except as to the topic of the information at the time the information was offered.

8

other party's attorney, consultant, surety, indemnitor, insurer, or agent)." FED. R. CIV. P. 26(b)(3). Thus, the doctrine protects documents prepared by a party's agent just as it would a party's attorney. *E.g., United States v. Nobles*, 422 U.S. 225, 238-39 (1975)." Fed. R. Civ. P. 26(b)(3).

The work product doctrine is very different from the attorney-client privilege. Unlike the attorney-client privilege, the protections of the work product doctrine are held by both the client and the attorney, and either may assert it. *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994). The attorney-client privilege exists to protect confidential communications and to protect the attorney-client relationship and is waived by disclosure of confidential communications to third parties. *Shields v. Sturm, Ruger & Co.* 864 F.2d 379, 382 (5th Cir. 1989). The work product doctrine, however, does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent. *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980). Therefore, the mere voluntary disclosure to a third person is insufficient in itself to waive the protections of the work product doctrine. *Id.;* 8 Wright & Miller, Federal Practice & Procedure § 2024, at 210 (1970). Still, its protections can be waived. For example, in the Fifth Circuit work product protections are waived when the attorney requests the witness to disclose the information or when the attorney discloses the information to the court voluntarily or makes no objection when it is offered. *Fox v. Taylor Diving & Salvage Co.,* 694 F.2d 1349, 1356 (5th Cir.1983).

    A.    <u>Baptist's alleged waiver of the Attorney-Client Privilege by Placing Disputed Materials "At Issue"</u>

Defendant argues that Baptist waived the attorney-client privilege relating to the disputed materials because Baptist injected the advice it received from its attorney(s) as a material issue in this case. Defendant does not deny the applicability of attorney-client privilege principles to the

9

requested information, but rather argues that the privilege has been waived, and therefore the documents should be discoverable.

Judge Wright's memorandum opinion, a portion of which was attached to defendant's motion to compel[3] establishes beyond any doubt that Baptist had knowledge of the potential litigation relating to the ECOI policy. Docket 71, ex. 7, p. 9-10. Defendant acknowledges that this fact has been established yet contends that it is entitled to the requested documents because "[e]ither Baptist was not advised of foreseeable facts or circumstances that may give rise to claims from passage of the Policy by retained legal counsel (Simpson), or Baptist was advised by Simpson of the likelihood of claims to arise from the passage of the policy." Docket 91, p. 4. "Under either scenario, [defendant] is entitled to the requested documents." *Id.* Baptist simply misses the mark.

It is undisputed that Baptist retained legal counsel, Harold Simpson, to give legal advice relating to the drafting and adoption of the ECOI and that part of that communication included the fact that adoption of similar policies by other health care entities had resulted in litigation in other venues. The claims in this case relate to the D&O insurance procurement, application and policy. An incorrect – or deliberately false – response to a question on those applications, even questions relating to possible claims that could arise under the policy (*i.e.*, future litigation arising as the result of the adoption of the ECOI) does not in the court's opinion put in issue the advice of counsel to his client in the adoption of the ECOI. If, in fact, there is no dispute[4] that Mr. Simpson informed

---

[3] The full text is at Docket 71, exhibit #7, or Docket 94-2.

[4] And the court doubts that there could be such a dispute in light of Judge Wright's ruling on that issue between the exact same parties. Indeed, it is possible that this judicial determination may entitle defendant to a holding that Baptist may not relitigate the issue. That, however, is a matter for determination by the trial judge.

Baptist's Board of Directors that litigation was possible, then it is the effect of that set of circumstances that is the critical issue in this case – not *what* Mr. Simpson told the Board, but *that* he told them that the policy may lead to litigation.

The controversy in this case arises from the application for D&O insurance. Certainly it is possible that Baptist's response to the warranty questions was not only incorrect but a deliberate misrepresentation. However, that the board members knew of the potential for litigation due to the adoption of the ECOI does not mean that the advice of counsel or any research, documents, materials or discussions relating to the adoption of that policy are fair game for unlimited discovery. The court holds that the attorney-client privilege and work product doctrine still attach to the requested materials, and the requested information is protected from discovery.

    B.    <u>Waiver of the Attorney Client Privilege Through Deposition Testimony Allen Smith, a Former Baptist Health Executive</u>

Citing *Jackson Medical Clinic for Women, P.A. v. Moore* defendant argues that the following deposition testimony evidences waiver of the attorney-client privilege:

> Q. Have you been present when Mr. Simpson discussed with the board, either board of trustees or the executive committee, his opinions concerning the economic conflict of interest policy?
>
> A. I was in the meeting when they would talk about it in a draft form, yes.
>
> Q. Do you recall any concerns that Mr. Simpson expressed?
>
> A. No.
>
> Q. Do you recall whether Mr. Simpson discussed the fact that there had been lawsuits in other states, but in those lawsuits the conflict of interest policy had been upheld?
>
> A. Yes.

11

> Q. Do you recall whether or not Mr. Simpson expressed any reservations from a legal standpoint to the boards' adopting this policy?
>
> A. I do not recall.
>
> Q. Whether he did or did not, you don't recall either way, correct?
>
> A. Correct.

(Docket 90, Exhibit H.). Defendant argues that this testimony from Allen Smith, a former Senior Vice President who was in charge of purchasing D&O insurance, waives the attorney-client privilege. The court disagrees. Even when read in context of the deposition, and not separately as quoted above, Smiths's testimony does not waive the attorney-client privilege. It does answer questions relating to the fact that Harold Simpson provided legal counsel and advice to the Board, but it in no way reveals the extent of those communications, any opinions or legal analysis by Mr. Simpson that were discussed with or relayed to the Board. In fact, the testimony reveals nothing other than that Smith was present when Simpson discussed the ECOI and that Simpson relayed the fact that there were lawsuits in other states relating to similar policies – an issue of public record easily initiated in an internet search and fleshed out with more in depth research at a public library or additional dedicated internet research sites.[5]

The attorney-client privilege "only protects disclosure of confidential communications between the client and attorney; it does not protect the disclosure of underlying facts." *Upjohn Co. v. United States*, 449 U.S. 383, 395-396, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Accordingly,

---

[5] The undersigned performed simple Google and Yahoo! searches that revealed numerous articles in both legal and medical journals relating to lawsuits as the result of economic credentialing policies and their outcomes. Thereafter, searches were performed on both Westlaw.com and Lexis.com. The fact that other lawsuits were filed, settled or tried and ultimately resolved is certainly not a privileged communication.

pre-existing facts that underlie the client's confidential communications are not privileged simply because the client disclosed them to an attorney for the purpose of obtaining legal services. *See id.* In a corporate setting, it can be more difficult to define the scope of the privilege when a communication is made to in-house counsel. *See Upjohn Co.*, 449 U.S. 383, 389, 101 S.Ct. 677. Thus, in the corporate setting, the attorney-client privilege attaches only to communications made for the purpose of giving or obtaining legal advice or services, not business or technical advice or management decisions. *See Stoffels v. SBC Communications, Inc.,* 263 F.R.D. 406 (W.D.Tex.2009). Therefore, the critical inquiry is whether any particular communication facilitated the rendition of predominantly legal advice or services to the client. *Stoffels*, 263 F.R.D. at 411.

In this case, the defendant relies on *Jackson* for its proposition that Smith's testimony waives the attorney-client privilege as to Simpson's legal advice and representation of Baptist and related materials. *Jackson* 836 So.2d 767. In *Jackson*, the Mississippi Supreme Court held that plaintiff had waived the attorney-client privilege because she "[c]learly . . . voluntarily testified regarding communications with [her attorney]." *Jackson* 836 So.2d at 773. The *Jackson* case also reiterates the rule in Mississippi, that when a client "voluntarily testified, as a witness, to confidential communications made by him to his attorney, he thereby waives the privileged character of such communications, and he and his attorney may then be fully examined in relation thereto." *Jackson* at 771, quoting *Bennett*, 293 So.2d at 5.

Smith's testimony, if it reveals any information at all, merely reveals facts relating to other lawsuits in other states resulting from the enactment of economic credentialing policies. This fact, while provided by Baptist's attorney, is in no way a privileged or confidential communication between an attorney and client. Rather it is an underlying fact, of a public nature, that is related to

13

decisions, information and communications which we accept may have led to the adoption by Baptist of the ECOI. It is neither the ECOI nor the adoption of the ECOI that actually gives rise to this case, but the application for and ultimately coverage of Baptist's D&O insurance that is the center of this case. For these reasons, the court concludes that the attorney-client privilege was not waived by Smith's testimony and remains intact as to the requested information.

Accordingly, it is **ORDERED** that Baptist Health's motion to compel is **DENIED**.

This the 28th day of May, 2010.

    /s/   S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE